**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BRADFORD R. WAUDBY, JR., | : | |
| | : | Civil Action No. 2:09-cv-1167 (SDW-MCA) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, PETE GEREN, SECRETARY OF THE ARMY, ARMY BOARD FOR THE CORRECTION OF MILITARY RECORDS, JANE DOES and JOHN DOES 1 through 10, (fictitious names for others unknown who participated in this administrative decision), | : | January 19, 2010 |
| Defendants. | | |

**WIGENTON**, District Judge.

Before the Court is a Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b), or in the alternative for Summary Judgment, pursuant to Fed. R. Civ. P. 56 (the "Motion") brought by all of the defendants in this action (the "Defendants"). The Motion seeks to dismiss Plaintiff Bradford R. Waudby's ("Waudby" or "Plaintiff") Complaint, which seeks a correction of his military record pursuant to 10 U.S.C. § 1552(a). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346. Venue is proper pursuant to 28 U.S.C. § 1391(e). The Motion is decided without oral argument pursuant to Fed. R. Civ P. 78.

# **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiff is a former cadet at the United States Military Academy ("USMA"). (Administrative Record 374-376 (hereinafter "AR").) He entered USMA on June 29, 2000, as a member of the Class of 2004 and was assigned to the Cadet Detachment, West Point, New York. (*Id*. 9.) Plaintiff was a member of the USMA varsity football team from November 21, 2000 to July 7, 2004; though his football career was effectively over after the last game of the 2003 football season. (*Id*. 9-10, 346.) The demands of Plaintiff's position on the football team required that he maintain an unusually large amount of muscle and body fat compared to other students at USMA. (*Id*. 9, 167-68.)

This physique made it more difficult for Plaintiff to successfully complete the standard Army Physical Fitness Test ("APFT"), which was administered to all USMA students periodically as part of their training. (*Id*. 167, 170.) A standard APFT has three sections: push-ups, sit-ups, and a two-mile run. (*Id*. 168.) The number of push-ups and sit-ups and the time allotted for the run depend on the gender and age of the examinee and are contained in the Army Field Manual 21-20.

Due to the physique he was required to maintain as a member of the football team, Plaintiff was made part of the Selected Athletes Program ("SAP") of the USMA. (*Id*. 8, 170.) Under SAP, Plaintiff was required to take an "Alternate APFT", which substitutes a twelve (12) minute bicycle ride for the two-mile run that other USMA students are required to complete. (*Id*. 168.) These athletes are also exempted from the Army Weight Control Program under Army

---

[1] On September 16, 2005, Waudby filed a complaint in this district regarding the same alleged conduct giving rise to this complaint. *See Waudby v. United States*, et al., No. 05-CV-4588 (JLL). In a Letter Order dated May 4, 2006, Judge Linares granted Defendants' Motion to Dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. It should be noted that in the previous instance, Waudby had not yet filed an application to the Army Board for the Correction of Military Records ("ABCMR") and specifically disavowed his reliance on the Administrative Procedure Act (the "APA") for jurisdiction.

Regulation 600-9. (*Id.*) Students must be removed from SAP no later than the end of the athletic season of their final year at the USMA. (*Id.* 197.) SAP policy states that "[o]nce removed from the program, former selected athletes, like all cadets, must meet Academy body composition standards and must meet all Physical Program testing and course requirements prior to graduation." (*Id.* 197.) These requirements include passing the APFT. (*Id.* 168.)

SAP policy also states that cadets participating in SAP "will be afforded adequate time for weight loss and conditioning, after which time they will be administered a 3-event APFT (pushups, sit-ups and two-mile run) as prescribed in FM 21-20." (*Id.* 197.)

On May 17 2004, after being removed from SAP, Plaintiff failed his first post-football APFT. (*Id.* 10.) Specifically, Plaintiff passed the push-up and sit-up portions of the APFT, but failed the two-mile run by two (2) minutes and eighteen (18) seconds (the maximum allowed time was sixteen (16) minutes and thirty-six (36) seconds). (*Id.*) Consequently, Plaintiff did not graduate with his class. (*Id.* 11.) In August 2004, Plaintiff re-took the APFT and was permitted to use a pace man. (*Id.* 24.) Once again, Plaintiff passed the push-up and sit-up requirements of the test, but failed the two-mile run by one (1) minute and fifty-nine (59) seconds, an improvement over his May time. (*Id.*) On August 30, 2004, the Superintendent of the USMA approved a recommendation to retain Plaintiff at the USMA for one more semester in order to pass the APFT. (*Id.* 11.)

After the August test, Plaintiff was enrolled in a class by the Department of Physical Education ("DPE"), which required him to run, bike and swim in every class, with classes meeting three times per week. (*Id.* 24.) Plaintiff concurrently participated in the Commandant's Physical Remediation Program ("CPRP"), in which he was enrolled after his first post-football APFT failure in May. (*Id.*) Plaintiff requested that his CPRP sessions be increased from two (2)

3

hours, three (3) days a week to two (2) hours, five (5) days a week. (*Id*.) His request was denied. (*Id*.) Plaintiff also began wearing a plastic jacket under his gym clothes so as to facilitate weight loss. (*Id*.) When the Regimental Executive Officer ("REO"), with whom he worked out, saw the plastic jacket, he confiscated it. (*Id*.)

During his last semester, in an attempt to ensure a successful APFT, Plaintiff trained with a former Special Forces team leader, Major Dean S. Newman, who volunteered his help after hearing about Plaintiff's prior failures. (*Id*. 24.) Major Newman and Plaintiff met between three (3) and five (5) times per week in the mornings, usually around 5:45 a.m., for long distance running. (*Id*. 24, 48.) During this time period, Plaintiff made substantial progress, evidenced by his passing the two-mile point (on his *uphill* runs) twenty (20) seconds faster than was required for the two-mile segment of the APFT (which was run on *flat* ground). (*Id*. 49.) In other words, during the period when they ran together, Major Newman and Plaintiff completed a two-mile run within the time that he was required to complete such a run under the APFT requirements. After a month and a half of training with Major Newman, Plaintiff developed heart problems, which prevented him from exercising for several weeks. (*Id*. 24, 49-50.) When he was medically cleared to return to his exercise regimen, he was instructed by DPE and superiors to no longer work out with Major Newman, despite the Major's protest. (*Id*. 50.) Consequently, Plaintiff went from working out five (5) times per week to three (3) days per week, and from three (3) times per day to two (2) times per day. (*Id*. 24.)

On December 6, 2004, Plaintiff was scheduled to retake the APFT. (*Id*. 11.) Once again, he passed the push-up and sit-up events. (*Id*.) Furthermore, Plaintiff had made arrangements for his company tactical officer to run as his pace man, as permitted under Army Field Manual 21-20. (*Id*. 24.) This request, however, was denied. (*Id.*) At every other APFT, Plaintiff was

4

allowed a pace man.  (*Id*.)  Furthermore, a pace man was allowed pursuant to Department of the Army regulations.  (Army Field Manual 21-20.)  Plaintiff failed the two (2) mile run by fifty-one (51) seconds.  (AR 11.)  Plaintiff alleges and the Army Board for the Correction of Military Records ("ABCMR" or "Board") concluded that had Plaintiff been permitted a pace man, he would have finished the two-mile run in the allotted time and would have consequently passed the APFT.  (*Id.* 22.)  This was the third time Plaintiff failed the exam.

On December 28, 2004, the Superintendent of the USMA, Lieutenant General William J. Lennox, Jr., recommended that Plaintiff be separated from the school, denied the Bachelor of Science degree, discharged from the United States Army and that action be taken to recover from Plaintiff the costs of his USMA education.  (*Id*. 584.)  On July 1, 2005, Plaintiff was honorably discharged and the United States Army directed recoupment.  (*Id*. 375.)  On July 25, 2005, the USMA Academic Board awarded Plaintiff a certificate of completion of the academic program in lieu of a degree.[2]  (*Id*. 439.)

Plaintiff applied to the ABCMR to have his record changed.  The Board unanimously granted his application in full and found that the "evidence clearly shows that the applicant successfully completed all of the academic requirements for award of the Bachelor of Science Degree."  (*Id*. 352.)  On April 10, 2008, however, the Secretary of the Army (the "Secretary"), because of an apparent procedural flaw, ordered that the Board reopen the case and obtain, among other things, an advisory opinion from the Deputy Chief of Staff.  (*Id*. 337.)

On September 24, 2008, the ABCMR panel unanimously granted Plaintiff full relief, including altering his record to show:

- That he passed the APFT in December 2004;

---

[2] Plaintiff appears to have taken his last academic courses during the first term of the 2004-2005 academic year. (AR 446.)

- That the secretary approved a recommendation from the USMA Academic Board for an award of a diploma without commissioning;
- That he graduated as part of the December 2004 class and was awarded a Bachelor of Science Degree;
- That he was honorably discharged on April 8, 2005 upon a recommendation from the USMA, with a new finding that it had not been due to a volitional act of misconduct and that no action would be taken to recoup the cost of his education. (*Id*. 34.)

On November 20, 2008, the Assistant Secretary of the Army, Pete Geren, issued a memorandum to the director of the Army Review Boards Agency, on behalf of the Secretary, refusing to accept the full determinations of the ABCMR. (*Id*. 2.) The Secretary ordered that the recoupment action against Plaintiff for the cost of his education be halted. (*Id*.) However, the Secretary modified the ABCMR's decision and refused to grant Plaintiff his diploma. (*Id*.) Instead the Secretary ordered that only if Plaintiff successfully re-applied for admission to the USMA, and then successfully completed the Physical Program, would he receive his degree and be commissioned as a Second-Lieutenant. (*Id*.)

Plaintiff brought an action in this Court pursuant to 5 U.S.C. § 701 *et seq*. and 28 U.S.C. § 1361 alleging, among other things, that the Secretary's decision to overturn the ACBMR was arbitrary and capricious. Defendants have moved to dismiss the Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b) or in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, their Motion will be granted in part, and denied in part.

## MOTION TO DISMISS AND SUMMARY JUDGMENT STANDARDS

### I.     Summary Judgment

If, on a motion under Fed. R. Civ. P. 12(b), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(d). As is the case here, when a motion to dismiss has been

6

alternately framed as a motion for summary judgment and the nonmoving party has submitted evidence extraneous to its pleadings, the Court need not provide the parties with express notice of conversion. *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 288-89 (3d Cir. 1999); *Hilfirty v. Shipman,* 91 F.3d 573, 578-79 (3d Cir.1996); *Butterbaugh v. Chertoff,* 479 F. Supp. 2d 485, 490 (W.D.Pa. 2007). Conversion of Defendants' Rule 12(b)(6) motions to Rule 56 motions is appropriate here. Defendants' motion to dismiss was framed in the alternative as a motion for summary judgment and Plaintiff did not object to the submission of materials outside of the pleadings.[3] *See Hilfirty,* 91 F.3d at 578-79 (finding that since two of five motions to dismiss were framed in the alternative as motions for summary judgment, plaintiff was on notice that the court would convert all of defendants' motions); *Butterbaugh*, 479 F. Supp. 2d at 490; *c.f. In re Rockefeller,* 184 F.3d at 287 (determining that notice of conversion was inadequate, and distinguishing *Hilfirty* on the basis that none of defendants' motions to dismiss were framed in the alternative as motions for summary judgment).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Id.* at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the

---

[3] Plaintiff's actions imply his consent to the conversion. Plaintiff submitted his Responsive Statement to Defendants' Uncontested Facts and Plaintiff's Uncontested Facts in connection with Plaintiff's Opposition to the Motion. Plaintiff also cites to the Administrative Record in his Opposition.

nonmoving party." *Id.* The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). Once the moving party meets its initial burden, the burden then shifts to the non-movant who must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini,* 254 F.3d 476, 481 (3d Cir. 2001). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson,* 477 U.S. at 255).

In order to defeat the Motion, Plaintiff "must introduce more than a scintilla of evidence showing that there is a genuine issue for trial; [it] must introduce evidence from which a rational finder of fact could find in [its] favor." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1020 (3d Cir.1991)). In *Anderson*, the Supreme Court stated:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .

477 U.S. at 252.

**II.    Motion to Dismiss**

In determining whether a complaint should be dismissed under Fed. R. Civ. P. 12(b)(1),for lack of subject matter jurisdiction, no presumption of truthfulness attaches to the allegations in the complaint and the court may consider matters outside the pleadings such as affidavits without converting the motion to one for summary judgment.  *Anjelino v. New York Times Co.*, 200 F.3d 73, 87 (3d Cir. 1999).  "[T]he Court is free to weigh the evidence and satisfy itself whether it has the power to hear the case."  *Carpet Group Int'l. v. Oriental Rug Importers Ass'n*, *Inc.*, 227 F.3d 62, 69 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen*, 549 F.2d at 891.  The plaintiff must not only demonstrate that a controversy existed at the time it filed suit, but that it continues to exist throughout the litigation.  *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992).

## DISCUSSION

**I.    Writ of Mandamus, 28 U.S.C. § 1361**

The Mandamus Act vests the district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  *See* 28 U.S.C. § 1361.  It is well-established that a writ of mandamus is an extraordinary remedy, to be granted only in extraordinary cases.  *See Heckler v. Ringer,* 466 U.S. 602, 616 (1984); *United States v. Olds,* 426 F.2d 562, 565 (3d Cir.1970). Furthermore, "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  *Heckler,* 466 U.S. at 616; *see also*

*Pittston Coal Group v. Sebben,* 488 U.S. 105, 121 (1988) ("[t]he extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty") (citation and internal quotation marks omitted).

Here, even if Plaintiff could establish that the award of his Bachelor of Science degree was a clear nondiscretionary duty owed to him by Defendants, Plaintiff has failed to demonstrate that he has exhausted all avenues of relief. Specifically, Plaintiff is also bringing a claim under 5 U.S.C. § 701 *et seq.* in which he argues that he should be awarded his diploma because the Secretary's decision to overturn the ABCMR's decision was arbitrary and capricious. Thus, Plaintiff is not entitled to a writ of mandamus because he has another means to seek relief. *See Heckler,* 466 U.S. at 616.[4]

## II.    5 U.S.C. § 701 et *seq*. (the Administrative Procedure Act)

Under the Administrative Procedure Act (the "APA"), the Court must uphold an agency's action unless it is "arbitrary, capricious, [or] an abuse of discretion," or "unsupported by substantial evidence." 5 U.S.C. § 706; *Soltane v. U.S. Dept. of Justice,* 381 F.3d 143, 148 (3d Cir. 2004). Whether or not a reasonable finder of fact could conclude that the Secretary acted arbitrarily and capriciously in deciding to refuse to correct the Plaintiff's record depends greatly upon the standard of review that the Secretary himself was required to exercise in reviewing the decision of the ABCMR.

The statute that allows for the correction of military records, 10 U.S.C. § 1552, states, in relevant part:

> (a)(1) The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an

---

[4] It should also be noted that Defendants have offered to give Plaintiff his diploma if he could pass the APFT. AR 6-35. Therefore, Defendants have provided Plaintiff with an additional, albeit impractical, avenue by which he still could obtain his diploma.

> error or remove an injustice.  Except as provided in paragraph (2), <u>such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.</u> […]
>
> (2) The Secretary concerned is not required to act through a board in the case of the correction of a military record announcing a decision that a person is not eligible to enlist (or reenlist) or is not accepted for enlistment (or reenlistment) or announcing the promotion and appointment of an enlisted member to an initial or higher grade or the decision not to promote an enlisted member to a higher grade. Such a correction may be made only if the correction is favorable to the person concerned.  (emphasis added).

To review the Secretary's decision, the Court must first analyze 10 U.S.C. § 1552 to determine the circumstances under which the Secretary can reject the ABCMR's recommendations.

As detailed infra, this Court finds, on the basis of longstanding precedent and important canons of statutory construction, the Secretary's rejection of the Board's decision could be found arbitrary, if the Board's decision is supported by substantial evidence.

    A.    **Secretary's Review of ACMBR's decision**

In 1946, Congress enacted 10 U.S.C. § 1552 to provide an administrative system to correct military records and review military discharges and dismissals so as to avoid an increasing burden imposed on Congress resulting from discharged servicemen seeking to have the nature, character, or type of their discharge certificate corrected.  Section 1552(a) provides the Secretary with the authority to alter a military record when necessary to correct an error or remove an injustice.  *Id*.  The section further provides that the Secretary acts through civilian military correction boards in making a records correction determination.  *Id*.  The statute confers a certain amount of discretion on the Secretary, including the discretion to "differ with . . . [a board's] recommendations . . . where the evidence is susceptible of varying interpretations." *Sanders v. United States*, 594 F.2d 804, 812 (Ct. Cl. 1979) (citing *Boyd v. United States*, 207 Ct.Cl. 1, 11 (1975)).

11

The ABCMR may deny relief if it determines that "insufficient relevant evidence has been presented." 32 C.F.R. § 581.3(c)(5)(ii). If the ABCMR determines that the application warrants a hearing, it must conduct a hearing and make written findings, conclusions and recommendations. 32 C.F.R. § 581.3(c)(5), (f)(1)(i)(c). The findings, conclusions and recommendation are forwarded to the Secretary of the Army, "who will direct such action in each case as he determines to be appropriate." 32 C.F.R. § 581.3(f)(2). In this case, the ABCMR held a hearing and unanimously recommended that Plaintiff's application be granted in full. The Secretary refused to adopt the ABCMR's recommendation and denied full relief.

Defendants assert that this Court may not review the Secretary's act of rejecting the ABCMR's recommendation, and instead may only look at the rationale underlying the Secretary's decision. In other words, Defendants argue that this Court's jurisdiction is limited to reviewing the basis of the Secretary's ultimate decision to withhold Plaintiff's diploma not the fact that the Secretary deviated from the Board's recommendation. This Court's review of the Secretary's decision might be limited; however, case law is clear that the Court may review the Secretary's deviation from ABCMR's decision to determine if that departure was arbitrary and/or capricious.

In *Neal v. Sec'y of Navy & Commandant of Marine Corps*, the Third Circuit held that the Secretary may not "arbitrarily overrule the recommendations of the [ABCMR] where its findings are justified by the record." 639 F.2d 1029, 1043 n. 13 (3d Cir. 1981) (citing *Nelson v. Miller*, 373 F.2d 474, 478 (3d Cir. 1967)); *see also Boyd*, 207 Ct.Cl. at 4 (holding that the Secretary could overturn the civilian board only "where the findings of that Board are not justified by the record on which the findings were made") (citing *Proper v. United States*, 139 Ct.Cl. 511, 526, (1957). Consequently, "[a]lthough the decision of the [ABCMR] is in the form of a

recommendation to the Secretary" the Secretary's power to ignore that recommendation is not absolute. *Neal*, 639 F.2d at 1043 n. 13. This limitation flows logically from the construction of 10 U.S.C. § 1552(a).

When Congress established military review tribunals under 10 U.S.C. § 1552(a)(1976), it intended to create an institutional check and promote fairness. In recognizing the Board's quasi-independency, the Third Circuit in *Neal* explained:

> The statute establishing military review tribunals explicitly obligates them to act to "remove an injustice," 10 U.S.C. § 1552(a)(1976), a task which necessarily entails an inquiry by the tribunal as to whether the individual has been treated in a manner comporting with traditional notions of fairness. In essence, the military correction boards were established to provide an institutional check on arbitrary action. Before the legislation which authorized creation of administrative boards, Congress itself reviewed military discharges on an ad hoc basis. When Congress determined to change the previously prevailing system, it did so by providing for tribunals with broad, not restricted review power. It need not have done so. It could have, without any constitutional impediment, maintained or perpetuated the practice by which military personnel decisions were the sole prerogative of the commanding officers. Instead, when Congress established civilian boards to review military personnel decisions, it did not provide for boards limited, as the names may erroneously imply, to the clerical function of making technical correction of records of military personnel.

639 F.2d at 1042.

Defendants cite *Strickland v. United States*, 423 F.3d 1335 (Fed. Cir. 2005) for the proposition that the Secretary "has…the authority to take such final action on board recommendations as he determines to be appropriate." *Id*. at 1338. This Court does not dispute that the decision on final agency action belongs to the Secretary, but according to Third Circuit case law, that authority is not unconditional. *See Neal*, 639 F.2d at 1043 n. 13.[5] The question then becomes under what circumstances can the Secretary reject the Board's recommendations and when is that rejection "arbitrary"?

---

[5] The Defendants also seem to recognize the limit on the Secretary's power. (*See* Defs.' Br. 11 n. 5) (citing *Neal* and explaining that the Secretary may not arbitrarily overrule the Board's recommendations).

At one point in their briefs, Defendants appear to misstate the standard of judicial review. (*See* Defs.' Br. 13). Defendants imply that the Secretary may overrule the Board as long as his decision is not "contrary to all evidence," quoting *Betts v. United States*, 145 Ct. Cl. 530, 535 (1959). This contention is not supported by the law. In, *Boyd* the Court of Claims set out a standard of "substantial evidence" for the judicial review of final agency action. *Boyd*, 207 Ct.Cl. at 4. The decision in *Boyd* went on to state that an action of the Secretary "contrary to all evidence" would be a clear example of an arbitrary decision. *Boyd*, 207 Ct. Cl. at 8-9 (citing *Betts,* 145 Ct. Cl. at 535).[6] This Court finds that the Secretary's decision to reject a Board's recommendation could be found arbitrary if the Board's decision is supported by substantial evidence. To hold that the Board's decision holds *no* weight would defeat the reasons for establishing military review tribunals and the purpose of 10 U.S.C. § 1552(a).

Two cases from the United States Court of Claims are both instructive and consistent with the Third Circuit's holding in *Neal - Proper v. United States*, 154 F.Supp. 317 (Ct. Cl. 1957) and *Weiss v. United States,* 408 F.2d 416 (Ct. Cl. 1969). *Proper* involved a request to correct the medical records of a service member diagnosed with multiple sclerosis. A retired Army general serving as an advisor to the Secretary sent a memorandum to the Assistant Secretary advising rejection of the Board recommendations. *Proper*, 154 F. Supp. at 324. He attached a directive denying relief, which the Secretary signed and issued. *Id.* The court pointed out that, contrary to statute, the Secretary had involved a member of the military in the civilian corrections process. *Id.* at 326. In addition, the court held that the Secretary acted arbitrarily in disregarding the civilian Board's findings, which, it found, were fully supported by the record.

---

[6] Additionally, courts have routinely overturned final Secretary action, irrespective of the Board's initial decision, if "[the Secretary] has exercised his discretion arbitrarily, capriciously, in bad faith, contrary to substantial evidence, or where he has gone outside the board record, or fails to explain his actions, or violates applicable law or regulations." *Boyd*, 207 Ct. Cl. at 4.

14

*Id.* at 326-27.  The *Proper* court stated that "we do not suggest that the Secretary may not overrule the recommendations of the Correction Board where the findings of that Board are not justified by the record on which the findings were made."  *Id.* at 326 (holding that Secretary erred in rejecting the Board's recommendation to correct the plaintiff's military record).

Similarly, in *Weiss,* the Court of Claims held that the Secretary's rejection of the Board's recommendation was unjustified because the Board recommendation was fully supported by the record and the Secretary had, instead, blindly followed the advice of a military officer.  The court noted that the Secretary had routed the Board's recommendation directly to the Navy Judge Advocate General for "comment or recommendations."  *Weiss,* 408 F.2d at 420.  Based on the short time frame involved, the court concluded that the Secretary could not have reviewed the record himself nor allowed his civilian staff to review it.  *Id.* at 420-21.  The *Weiss* decision states: "[t]he thrust of the *Proper* opinion is that a Secretary of a military department cannot overrule the recommendations of a civilian correction board on the advice of a military officer *unless the findings of the board are not justified by the record before it.*"  *Id.* (emphasis added). *See also Miller v. Lehman*, 801 F.2d 492, 497 (D.C. Cir. 1986) (citing both to *Weiss* and *Proper* and recognizing that the decision of a civilian board may be binding upon the Secretary "because of section 1552(a)'s mandate that the Secretary 'act[…] through boards of civilians' when correcting military records"); *Mudd v. Caldera*, 26 F. Supp. 2d 113, 119-124 (D.D.C. 1998) (holding that the decision of the Secretary of the Army to reject the unanimous recommendation of the Army Board for the Correction of Military Records was arbitrary and capricious and unsupported by substantial evidence in the record).

Though the Court will not make a final determination at this juncture, the trier of fact in this case could determine that the Secretary's deviation from the ABCMR's decision was against

15

substantial evidence and thus arbitrary.[7] The evidence in support of the Board's decision is compelling.

### 1) Substantial evidence supports Board's decision

The ABCMR granted Plaintiff's application based upon the record and evidence before it. The Board's decision stated:

> The applicant was placed in a situation that increased the potential for failure. It was unrealistic to expect that he could lose sufficient muscle weight and concurrently develop the physical endurance needed to complete the two mile run within the Army standard, without a very strong training program. He was denied the kind of program he thought he needed and wanted. Further, he was denied the assistance of a pace man in his final APFT; a crucial test on which his entire military career rested.
>
> The applicant has provided compelling evidence to grant him relief he requests as a matter of equity. […] The Army knew or reasonably should have known that, after encouraging the applicant to gain weight and easing fitness requirements, that it would be difficult if not impossible, to meet commissioning standards. In this respect, the Army made an empty promise of commission to the applicant, as it was conditioned upon a requirement that the applicant was unlikely to meet, and that it appears, USMA at times made it more difficult to attain. As a matter of fairness and equity the ABCMR should grant the applicant relief. (AR 30-31.)

Equitable concerns and fairness are an acceptable basis upon which the ABCMR may grant relief. Under 5 U.S.C. § 1552 the civilian board, acting on the Secretary's behalf, was granted the discretion to correct any military record, not only when it was necessary to "correct an error" but also when it was necessary to "remove an injustice." In this case, the evidence supporting the ACBMR's decision is extensive:

1. Plaintiff requested that the 3-day per week CPRP class meet every week. His request was denied.
2. Plaintiff began wearing a plastic jacket under his gym clothes to facilitate faster weight loss (a practice he successfully engaged in during high

---

[7] *See Marino v. Indus. Crafting Co.,* 358 F.3d 241, 247 (3d Cir. 2004) (holding that "[i]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor.) (internal quotations omitted).

16

       school to make weight for wrestling). Once discovered, the plastic jacket was confiscated.
3. Plaintiff began a long distance running program with one of his instructors. Under the instructor's supervision, Plaintiff passed the two-mile point (on his *uphill* runs) 20 seconds faster than was required for the two-mile segment of the APFT. Despite his progress, Plaintiff was ultimately reprimanded and prohibited from continuing this running regimen.
4. Plaintiff enrolled in an aerobics and swimming classes to strengthen his endurance. Plaintiff was told he could only follow the DPE program.
5. Plaintiff was denied a pace man for his last two-mile run; a denial that was inconsistent with Army Regulations. Had he been allowed a pace man, the evidence suggests that Plaintiff would have completed the run section of the APFT.

In justifying his rejection of the Board's recommendation, the Secretary states that: "[i]n my opinion, the ABCMR failed to reconcile adequately the conflicting evidence regarding the sincerity and intensity of Mr. Waudby's efforts to pass the APFT." (AR 4.) Significantly, however, the Board confronts this "conflicting evidence" head-on. The Board states in relevant part:

> The allegations that the applicant had continued to engage in binge eating, consumption of alcohol to excess, and smoking, is contradicted by the evidence. From January 2004 to August 2004, the applicant had a steady loss of body fat from 33.54 percent down to 21.55 percent. Clearly, he must have been doing something right. In addition, a USMA instructor and six fellow cadets insist that the applicant was meeting his weight loss and APFT goals. (*Id*. 33.)

Thus, contrary to the Secretary's opinion, the Board gave thorough consideration to the evidence presented against Plaintiff but still found that the only logical outcome favored granting Plaintiff's application.

    **2) Secretary relied on improper finding of fact**

       The Secretary, without sufficient explanation, improperly relied on a finding of fact that was contrary to a finding made by the ABCMR. The ABCMR found that: "[i]t is more than reasonable to presume that had [Plaintiff] been permitted a pace man he would have reduced his

17

two-mile run time by at least 51 seconds, and passed the event." (*Id*.) The Secretary's decision, however, states:

> It is not clear from the evidence elucidated in the ABCMR's Record of Proceedings that Mr. Waudby would have completed the two-mile run within the allowed time even had he been permitted a pace person. On the contrary, there is substantial evidence in the record to support the opposite conclusion (i.e. that Mr. Waudby was not working as hard as he should have to pass the APFT[…])." (*Id*. 4-5.)

The Secretary's choice of language indicates that he disregarded the ABCMR's finding of fact merely because he disagreed with it, not because it was unsupported by evidence. To the contrary the evidence in favor of Plaintiff's application is telling. Significantly, during a training session in the Fall of 2004, Plaintiff, with the help of a pace man, ran two miles uphill in a time that was twenty (20) seconds faster than what was required to pass the APFT two-mile run. (*Id*. 301.) Additionally, according to Army Regulations, a pace man should have been permitted and in fact was permitted at every other APFT when requested by Plaintiff. (Army Field Manual 21-20; AR 301.)

### 3) Incorrect Standard applied by Secretary

The Secretary's rationale in overruling the decision of the civilian ABCMR was, at least in part, flawed. The Secretary's decision states, in relevant part, that

> [t]he ABCMR's record contains no evidence to suggest that the Superintendent's decision regarding Mr. Waudby were arbitrary, capricious or motivated by bad faith, or otherwise improper. AR 4.
>
> the ABCMR failed to demonstrate that the Superintendent's decision to separate Mr. Waudby from USMA, discharge him from the U.S. Army with an Honorable Discharge Certificate, and grant him a certificate of completion in lieu of a diploma was either unreasonable or unsupported by the record. (*Id*.)

18

Significantly, however, misconduct by the Superintendent was not necessary to justify the Board's finding. The ABCMR conducted a de novo review of the Superintendent's decision and found that Plaintiff's application should be granted.

The Secretary's disagreement with the Board's recommendation boils down to the interpretation of conflicting facts. In light of the overwhelming evidence supporting the Board's decision, and the lack of a more persuasive explanation in the Secretary's opinion, a trier of fact could find that disagreement arbitrary. Furthermore, whether or not the Secretary's disagreement is arbitrary is a genuine issue of material fact precluding granting Defendants' Motion in its entirety.[8]

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss, or in the alternative for Summary Judgment, will be DENIED in part and GRANTED in part.

**SO ORDERED.**

s/ Susan D. Wigenton<br>
**Susan D. Wigenton, U.S.D.J.**

cc: Madeline Cox Arleo, U.S.M.J.

---

[8] The Secretary's additional argument that his decision was not arbitrary and capricious because he offered Plaintiff another opportunity to take and pass the APFT is not persuasive. (*See* Defs.' Br. 25.) It has been five years since Plaintiff last took the two-mile APFT test and was forced to leave the Academy. Considering the difficulty Plaintiff had in passing the test in the first instance, at a time in which he was physically active and engaged in rigorous training at the USMA, it is not hard to imagine passing the test now would be nearly impossible. The Secretary's offer would just be setting Plaintiff up for further failure.